David T. Pritikin (*Pro Hac Vice*)
dpritikin@sidley.com
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

M. Patricia Thayer (SBN 90818)
pthayer@sidley.com
Philip W. Woo (SBN 196459)
pwoo@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

I. Neel Chatterjee (SBN 173985)
nchatterjee@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

William H. Wright (SBN 161580)
wwright@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020
Facsimile: (213) 612-2499

Attorneys for Plaintiff
SYNOPSYS, INC., a Delaware Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SYNOPSYS, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MENTOR GRAPHICS CORPORATION, an Oregon Corporation,<br><br>Defendant. | Case No. 3:12-cv-06467-MMC (DMR)<br><br>**SYNOPSYS, INC'S SUPPLEMENTAL BRIEFING ON THE IMPACT OF A PROSECUTION BAR** |

Pursuant to this Court's order on January 14, 2014 (Dkt. No. 122), Plaintiff Synopsys, Inc. ("Synopsys") hereby submits this supplemental briefing to address the "actual, non-speculative impact" of maintaining the prosecution bar protection in this case.

The factors that this Court identified demonstrate that the actual, non-speculative impact of the prosecution bar has been, and will continue to be, minimal for Defendant Mentor Graphics Corporation ("Mentor") but extremely important for Synopsys. This case concerns different patented inventions from those at issue in the Oregon cases. As such, although one Mentor product and one Synopsys product is relevant to both actions, the highly confidential technical information in this case that Synopsys seeks to protect through a prosecution bar is not relevant to the Oregon cases.

**I.     Between this case and the Oregon cases, there are no overlapping issues germane to the protections of a prosecution bar (Factors 1 and 5).** The purpose of a patent prosecution bar is to mitigate the risk that a party's proprietary information disclosed in litigation could be inadvertently used to the recipient's competitive advantage in prosecuting its own patents. *See Software Rights Archive, LLC v. Facebook, Inc.*, Case No. 5:12-cv-03970-RMW-PSG, 2014 U.S. Dist. LEXIS 4673, at *7 (N.D. Cal. Jan. 13, 2014). Such risk is "much greater" when attorneys who receive highly confidential technical information also regularly engage in patent prosecution activities such as "making strategic decisions on the type and scope of patent protection that might be available or worth pursuing." *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1380-81 (Fed. Cir. 2010). The issues germane to a prosecution bar are therefore those that will require discovery of highly confidential *technical* information, and such issues are shaped by the subject matter of the claimed inventions in each case.

The asserted patents in this case concern logic synthesis: the process of using computer tools to convert (or "synthesize") a human user's abstract descriptions of the operations of an integrated circuit into a design implementation incorporating specific electronic components that perform those operations. Logic synthesis technology can be used in standalone products or incorporated into an emulator product to test and debug an integrated circuit design before committing the design to silicon. Given this versatility, Synopsys has accused two Mentor product families in this case: the Veloce emulator product, and the Precision synthesis product. *Declaration*

1

*of M. Patricia Thayer in Support of Synopsys, Inc.'s Supplemental Briefing on the Impact of a Prosecution Bar ("Thayer Decl.")*, at ¶ 2. Although one of the accused products, Veloce, overlaps with the Oregon cases, the Precision product is unique to this case.

The Synopsys patents at issue in the Oregon cases also relate to emulation technology, but only to the functional verification, or "debugging," elements of emulation technology. Veloce, a full-service emulation product, is accused in both cases because it is capable of synthesizing user descriptions and then debugging the synthesized designs. By analogy, if Veloce were a car, the difference between the patented technologies in each case would be akin to the difference between a patent for the ignition system and another for the exhaust system. The technical information relating to a car's ignition would necessarily be different from that relating to the car's exhaust, even though they are part of the same car. Likewise, Veloce incorporates many technologies into one product, but it does not follow that discovery pertaining to Veloce's infringement of a logic synthesis patent will be relevant to a case involving debugging, or vice versa.[1]

Given the differences between the patents in this case and those in the Oregon cases, the issues are also necessarily different, particularly as they involve analysis of Synopsys's highly confidential technical information. The highly confidential information relevant to the infringement and validity issues in this case involve a different technology and several different products than those at issue in the Oregon cases. Mentor has sought extensive discovery on Synopsys products to confirm conception and reduction to practice of the asserted patents in this case. Such issues are also different across the cases because the patents concern different technology, were conceived of and reduced to practice on different dates, and are implemented in different products.

If there is any overlap with the Oregon cases, it is limited to the issue of damages, and the discovery of highly confidential sales information relating to the relevant products. Sales information, however, is not germane to the prosecution bar, as such information is unlikely to be used in a way that would benefit the recipient in affecting patent claim scope. *In re Deutsche Bank*,

---

[1] Mentor incorrectly criticizes Synopsys's proposed scope for the prosecution bar. The scope of the prosecution bar should include patents covering systems for emulation or functional verification to reflect the nature of the accused Veloce product and the full scope of potential uses for the logic synthesis technology reflected in Synopsys's technical information.

605 F.3d at 1381.

**II.     Discovery of highly confidential technical information in this and the Oregon cases overlaps only with respect to one accused Mentor product and one of several Synopsys products that practice the asserted patents (Factors 2 and 6).**  The subject matter of highly confidential technical information produced in this case will likely pertain to the two accused Mentor products, Veloce and Precision, and multiple Synopsys products that practice the claimed inventions of the asserted patents, *i.e.*, HDL Compiler (part of the Design Compiler product), Synplify, Certify, and Synphony Model Compiler.  *See Thayer Decl.*, at ¶ 2.  The highly confidential technical information requested by Mentor has included not only product manuals, but also documents concerning Synopsys's commercial exploitation of the claimed inventions, executable programs, and source code.  *See Thayer Decl.*, Ex. A.  Such information is exactly the type that can be used by a patent prosecutor to a competitor's advantage.  *See Applied Signal Tech., Inc. v. Emerging Mkts. Communs.*, Case No. C-09-02180 SBA (DMR), 2011 U.S. Dist. LEXIS 97403, at *8-9 (N.D. Cal. Jan. 20, 2011) ("In contrast with financial data or business information, confidential technical information, including source code, is clearly relevant to a patent application and thus may pose a heightened risk of inadvertent disclosure.").

In the Oregon cases, the highly confidential technical information produced by Synopsys is of a similar type, but relate to the following products:  Mentor's Veloce product, and Synopsys's ZeBu, HDL Advisor, Identify, Synplify, Protolink, Verdi, and Design Compiler products.  *See Thayer Decl.*, Ex. B.  The only overlap is in Mentor's Veloce and Synopsys's Synplify.  Thus, there is a large body of highly confidential technical information concerning Synopsys's logic synthesis products other than Synplify that will not be produced in the Oregon cases because they are not relevant to debugging.

Further, because the subject matter of the inventions in this case is different from that addressed in the Oregon cases, even the discovery of highly confidential technical information relating to the overlapping products is not the same in the respective cases.  For example, Synplify is only relevant to the Oregon cases because it embodies one of Synopsys's debugging patents when used in conjunction with another Synopsys product (Identify).  *Thayer Decl.*, Ex. B.  Information

concerning how Synplify and Identify together practice a debugging patent is different from the extensive discovery that Mentor has sought concerning how Synplify alone embodies one of Synopsys's asserted logic synthesis patents in this case. Indeed, Synopsys has supplied claim charts with references to Synopsys's own confidential technical information in response to an Interrogatory from Mentor seeking information about how Synopsys's own products practice the asserted patents. *See Thayer Decl.*, at ¶ 5. These charts include Synplify but have not been produced in the Oregon cases because they relate only to the logic synthesis subject matter of this case. In response to other RFP's, Mentor has received access to HDL Compiler source code and received productions of technical manuals for HDL Compiler, Certify, and Synphony Model Compiler, as well as executable program disks for all of the Synopsys logic synthesis products at issue. All of this discovery relates only to the subject matter of this case and has not been produced in the Oregon cases. This discovery involves highly confidential technical information about Synopsys's products that could potentially be used to Mentor's competitive advantage if known to patent prosecutors. Such is the risk that the prosecution bar is designed to mitigate. *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).

Aside from a subset of highly confidential technical information pertaining to Veloce and Synplify that may be relevant in both cases, there is very little overlap in other aspects of discovery. The parties in the Oregon cases are close to completing fact discovery and have carried out numerous depositions that, by agreement, have been limited to the specific issues of the Oregon cases. For the sake of convenience, the parties agreed to consolidate email discovery procedures and obtained the entry of parallel protocols in the both cases. *See* Dkt. No. 97. Although the email request and meet and confer procedures were consolidated, the email productions were not: Synopsys made separate, non-overlapping email productions in the Oregon and California cases, and Mentor has likewise followed suit.

Synopsys does not suggest that Mentor's patent prosecutors would intentionally use their knowledge of Synopsys's highly confidential product information in prosecuting Mentor's patents, but "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *FTC v. Exxon Corp.*, 636

4

F.2d 1336, 1350 (D.C. Cir. 1980). Synopsys should not be required to shoulder the risk of exposing all of its technical secrets to its second largest competitor because a company that it acquired (Eve) provided discovery on one or two of its products in a different case, in a different venue, involving different technology.

**III.     Both parties are represented by experienced counsel from more than one law firm (Factor 3).** Synopsys's primary outside counsel in this case are: David T. Pritikin, M. Patricia Thayer, Philip W. Woo, Aseem S. Gupta, David T. DeZern, Clarence A. Rowland, Sue Wang, and Cynthia Chi of Sidley Austin, LLP. I. Neel Chatterjee, Vickie L. Feeman, and Scott Lonardo of Orrick, Herrington & Sutcliffe LLP are participating as needed to coordinate the Oregon actions with this one. Synopsys is also represented by its in-house counsel, David Pursley and Shanée Nelson. While neither Mr. Pursley nor Ms. Nelson is involved in competitive decision-making relating to the subject matter of this litigation, Mentor has continued to block Mr. Pursley and Ms. Nelson's access to highly confidential information produced in this case. None of the counsel listed above are involved in patent prosecution for Synopsys.

Mentor is represented by over a dozen attorneys from two law firms—O'Melveny & Myers LLP and Klarquist Sparkman LLP—that tout their experience in intellectual property litigation. According to the profiles available on each respective firm's websites, most of the attorneys who have appeared or participated in this case are not patent prosecutors. Finally, Mentor's in-house counsel, Tom Evans, has appeared at hearings in this case and Synopsys understands that he has a role in patent prosecution at Mentor.

**IV.     The existing prosecution bar has minimally impacted the parties' ability to litigate this matter and is unlikely to present any greater difficulty in the future (Factor 4).** This case has been pending since December 21, 2012. When certain of Mentor's outside counsel initially appeared in this case, Synopsys realized that those counsel could be involved in patent prosecution and specifically sought assurance from Mentor that such counsel had taken steps to comply with the prosecution bar. *Thayer Decl.*, Ex. C, D. To the best of Synopsys's knowledge, Mentor has complied with the prosecution bar, and two patent prosecutors representing Mentor in Oregon, Patrick M. Bible and Mark W. Wilson, have not appeared in this case due to the bar. Thus, for a

5

little over a year, Mentor has developed its non-infringement case, served two sets of invalidity contentions, and completed claim construction, all while complying with the prosecution bar. Mentor has not claimed that the prosecution bar has prejudiced its case thus far.  Indeed, the prosecution bar does not preclude Mentor's patent prosecutors from consulting on any aspects of Mentor's non-infringement and invalidity defenses that can be carried out without reference to Synopsys's highly confidential technical information.

It is thus difficult to conceive of a reason why Mentor cannot continue litigating this case with its present counsel and why, specifically, it now needs its patent prosecutors to have access to Synopsys's proprietary technical information.  At least one of Mentor's current counsel has a background in electrical engineering,[2] and numerous others have experience representing companies in the field of electronics and electronics engineering.[3]  These counsel are also assisted by technically proficient expert consultants and witnesses. *Thayer Decl.*, Ex. E.  It is therefore unlikely that the "technical know-how" of Mentor's patent prosecutors would provide any greater advantage in analyzing Synopsys's logic synthesis technology than would Mentor's current counsel, who have already litigated this case and analyzed this technology for a year.  Rather, eliminating the prosecution bar would only serve to place highly confidential technical information about several Synopsys products into the hands of patent prosecutors for its second largest rival, creating a high risk that such information would be used to Mentor's competitive advantage.

Finally, the prosecution bar in this case presents no additional burden to Mentor's in-house counsel, Mr. Evans, who is Mentor's "Designated In-House Counsel" pursuant to the protective order in the Oregon cases.  Under that protective order, Designated In-House Counsel must not be involved in "patent prosecution related to emulation, functional verification, or logic synthesis." *Thayer Decl.*, at ¶ 9.  Thus, Mr. Evans is already subject to a prosecution bar in the Oregon cases and should be likewise subject to a bar of similar subject matter scope in this case.

---

[2] *See* http://www.klarquist.com/showbio.aspx?Show=121 (last visited January 16, 2014).
[3] *See*, *e.g.*, http://www.klarquist.com/showbio.aspx?Show=36; http://omm.com/luannsimmons/; http://omm.com/markmiller/ (last visited January 16, 2014).

Dated:  January 17, 2014

Respectfully submitted,

By:  */s/M. Patricia Thayer*
       M. Patricia Thayer

David T. Pritikin (*Pro Hac Vice*)
dpritikin@sidley.com
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:   (312) 853-7036

M. Patricia Thayer (SBN 90818)
pthayer@sidley.com
Philip W. Woo (SBN 196459)
pwoo@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA  94104
Telephone:  (415) 772-1200
Facsimile:   (415) 772-7400

I. Neel Chatterjee (SBN 173985)
nchatterjee@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401

William H. Wright (SBN 161580)
wwright@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:  (213) 629-2020
Facsimile:   (213) 612-2499

Attorneys for Plaintiff
SYNOPSYS, Inc., a Delaware Corporation