United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS INC, | No. C-12-06467-MMC (DMR) |
| Plaintiff(s), | **ORDER RE: JOINT DISCOVERY LETTER [DOCKET NO. 113]** |
| v. | |
| MENTOR GRAPHICS CORP, | |
| Defendant(s). | |

    Before the court is a joint discovery letter submitted by Plaintiff Synopsys Inc. and Defendant Mentor Graphics Corp. [Docket No. 113.] Mentor seeks entry of a protective order in this litigation that mirrors the protective order in other litigation between the parties pending before the District of Oregon. Synopsys urges the continued use of this district's model protective order ("Model PO"), which has by default governed the case since discovery began in March 2013. In particular, Synopsys wants the protection of the prosecution bar contained in the Model PO, while Mentor does not. On January 14, 2014, the court ordered the parties to submit supplemental briefing addressing the extent to which the issues, subject matters of the inventions, and subject matters of highly confidential information overlapped between the Oregon case and this case. [Docket No. 122.] The court held a hearing on the letter on January 23, 2014. For the reasons stated below and at the hearing, Mentor's motion is granted in part and denied in part.

## I. BACKGROUND

On December 21, 2012, Synopsys filed a complaint against Mentor alleging four counts of patent infringement.[1] [Docket No. 1.] This lawsuit is only one of four active district court actions between Synopsys and Mentor. The other three actions have been consolidated into one and are pending in the District of Oregon.[2]

The parties are apparently also engaged in litigation in Japan and in an *inter partes* review ("IPR") before the Patent and Trademark Office, *see* Letter at 3, but have not provided this court with details about the subject matter of those proceedings.

Synopsys avers that it is a direct competitor of Mentor, as they are the first and third largest providers of electronic design automation tools in the world. Letter at 6.

**A. The Oregon Protective Order**

On January 26, 2011, the Oregon court entered a stipulated protective order (the "Oregon PO").[3] At the time, Synopsys was not a party to the Oregon litigation, as it had not yet acquired EVE.

While the Oregon PO does not have the Model PO's prosecution bar, it does contain provisions that are not in the Model PO that reduce the risk of disclosing sensitive information to individuals involved in the patent prosecution process. For example, the Oregon PO states that materials designated as "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" may be viewed at outside counsel's office by two Designated In-House Counsel (and their administrative

---

[1] The four patents that Synopsys alleges Mentor infringed are U.S. Patent Nos. 5,748,488; 5,530,841; 5,680,318; and 6,836,420.

[2] *See Mentor Graphics Corporation v. EVE-USA, Inc. et al.*, No. 3:10-cv-954-MO (D. Or., filed Aug. 12, 2010); *Mentor Graphics Corporation v. EVE-USA, Inc. et al.*, No. 3:12-cv-1500-MO (D. Or., filed Aug. 17, 2012); *Synopsys Inc. v. Mentor Graphics Corporation*, No. 3:13-cv-579-MO (D. Or., filed Sept. 27, 2012). The first two actions are patent infringement suits filed by Mentor against Defendants EVE-USA Inc. and Emulation and Verification Engineering, S.A. (collectively "EVE"). EVE was subsequently acquired by Synopsys in late 2012. Letter at 5. The last action was originally filed by Synopsis in the Northern District of California and subsequently transferred to the District of Oregon and consolidated with the other two cases. *See Synopsys, Inc. v. Mentor Graphics Corp.*, No. 3:12-cv-5025-MMC (N.D. Cal.). It seeks declaratory judgment of invalidity and non-infringement of three of Mentor's patents, none of which form the basis for Mentor's allegations of infringement against EVE. The court refers to these consolidated cases as the "Oregon case."

[3] A copy of the currently operative Oregon PO can be found in this case at Docket No. 108-1.

staff or paralegals), provided that those Designated In-House Counsel are "(i) not involved in competitive decision-making activities such as pricing and product design; or (ii) not involved in patent prosecution related to emulation, functional verification, or logic synthesis tools," and that the receiving party notify the designating party in writing that those materials will be disclosed to the in-house counsel. Oregon PO at ¶ 10. Furthermore, "[a]ny Designated In-House Counsel shall not engage in any competitive decision-making or restricted patent prosecution for six months after the individual's last access of 'HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY' information," *id.*, and may not possess such documents but may only view them at "at outside counsel's office." *Id.* at ¶ 10(c).

On July 10, 2013, after the other case that Synopsys filed in this district was transferred to the District of Oregon, Synopsys moved the Oregon court to modify the Oregon PO to, *inter alia*, add a prosecution bar. *See* Docket No. 394, *Mentor Graphics*, No. 10-cv-954-MO (D. Or. July 10, 2013). The court denied the motion and declined to add a prosecution bar to the Oregon PO. *See* Docket No. 409, *Mentor Graphics*, No. 10-cv-954-MO (D. Or. July 19, 2013).

**B. The Model Protective Order**

This district's Patent Local Rule 2-2 states that "the Protective Order authorized by the Northern District of California shall govern discovery unless the Court enters a different protective order. The approved Protective Order can be found on the Court's website."[4] Thus, by default, the parties have been operating under the Model PO since discovery began in March 2013. However, the parties appear to have agreed upon some modifications to the Model PO; Mentor avers that the parties have employed certain provisions of the Oregon PO regarding source code and product inspection that do not have parallels in the Model PO. *See* Docket No. 107 at 10.

The Model PO includes a prosecution bar provision that states:

> Absent written consent from the Producing Party, any individual who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information shall not be involved in the prosecution of patents or patent applications relating to [insert subject matter of the invention and of highly confidential technical information to be produced], including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office"). For purposes of this paragraph, "prosecution" includes directly or indirectly drafting, amending, advising, or

---

[4] *See* http://www.cand.uscourts.gov/stipprotectorder (last accessed Jan. 28, 2014).

3

otherwise affecting the scope or maintenance of patent claims.[5] To avoid any doubt, "prosecution" as used in this paragraph does not include representing a party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, ex parte reexamination or inter partes reexamination). This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information is first received by the affected individual and shall end two (2) years after final termination of this action.

Thus, under the Model PO, anyone who views the designated information, including outside counsel, becomes subject to the two-year prosecution bar. By comparison, under the Oregon PO, only Designated In-House counsel who are not already competitive decision-makers or patent prosecutors in the proscribed subject area are prohibited from engaging in those activities for six months as a consequence of viewing protected documents. Outside counsel may view the protected information without triggering the limitations on future practice that are imposed through a prosecution bar.

**C. Other Differences Between Oregon PO and Model PO**

The Oregon PO has additional provisions that the Model PO does not: (1) it allows the parties to use evidence produced in Oregon as a good faith basis for an allegation in other litigation, or to request the information in other litigation, whereas the Model PO does not address this issue; (2) it has a fourth tier of confidentiality (undesignated; confidential, highly confidential; *and* third-party confidential), whereas the Model PO has only three; (3) it has detailed procedures for designating and marking confidential material; and (4) it creates procedures for the inspection of source code and products. Letter at 2-3, 5. Synopsys' position with respect to these additional terms is not clear from the parties' joint letter. Instead, the focus of the parties' dispute is the prosecution bar in the Model PO.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the

---

[5] Prosecution includes, for example, original prosecution, reissue, and reexamination proceedings. Model PO at 12 n. 3.

1  discovery process requires that the trial court have substantial latitude to fashion protective orders."
2  *Id.*

3  "[T]he determination of whether a protective order should include a patent prosecution bar is
4  a matter governed by Federal Circuit law." *In re Deutsche Bank Trust Co. Americas,* 605 F.3d 1373,
5  1378 (Fed. Cir. 2010). Generally, a party seeking to include a prosecution bar in a protective order
6  carries the burden of showing good cause for its inclusion. *Id.* Here, however, the Model PO has
7  been approved by the court and governs discovery unless the court enters a different protective
8  order. *See* N.D. Cal. Patent L.R. 2-2. In fact, the parties have been conducting discovery under the
9  Model PO since March 2013. Under ordinary circumstances, "the court treats the model protective
10  order as setting forth presumptively reasonable conditions regarding the treatment of highly
11  confidential information." *Kelora Sys., LLC v. Target Corp.*, No. 11-cv-2284 CW LB, 2011 WL
12  6000759, at *2 (N.D. Cal. Aug. 29, 2011).

### III. DISCUSSION

**A. Inclusion of Prosecution Bar**

Mentor argues that Synopsys' motion for a prosecution bar in the Oregon PO was denied by that court, and its current insistence on the prosecution bar in this litigation is an attempt to get a second bite at the apple. However, while the Oregon court's rejection of the prosecution bar is relevant to the court's consideration, it is not dispositive.[6] This court is not bound to the decisions of the Oregon court, particularly where the Model PO reflects this district's default position on the appropriate terms of a protective order in a patent case. Moreover, in the Oregon case, Synopsys had moved to add the prosecution bar to the protective order after the parties had for two years been operating under a protective order that did not include a prosecution bar; here, the prosecution bar operates as a default, and it is Mentor who seeks to disrupt the status quo, as the parties have been abiding by the Model PO since March 2013.

However, the court does consider the Oregon PO to the extent that having a different protective order in this case would create confusing obligations for the parties. Mentor contends that having a prosecution bar in this case but not in any of the other proceedings between the parties

---

[6] The Oregon court denied Synopsys' motion to add the prosecution bar without an explanation of its ruling. *See* Docket No. 409, No. 3:10-cv-954-MO (D. Or. July 19, 2013).

1  would create inconsistent responsibilities.  If the same documents are produced both here and in

2  Oregon, certain Mentor attorneys would be permitted to view those materials and be involved in the

3  prosecution of patents relating to the subject matter of those materials under the Oregon PO, but the

4  same attorneys could be prohibited from those same activities if the Model PO imposes a

5  prosecution bar on them.[7]  Such an outcome would contradict the intention of the Oregon court by

6  prohibiting behavior that it has permitted.

7       While Synopsys admits it has produced some of the same materials in discovery in Oregon

8  and here, it also contends that it has produced certain materials *only* in this case, and that those

9  materials involve highly confidential information that could be used to damage its competitive

10  position.  The parties also stated at the hearing that they would be able to determine whether a

11  document had been produced only in this case, as opposed to in both cases or only in the Oregon

12  case.

13       The judges of this district have adopted the Model PO, inclusive of a prosecution bar, and as

14  such it is presumptively reasonable.  Mentor has not articulated any specific potential difficulties it

15  will face as a result of being limited by the prosecution bar to certain counsel in this litigation or

16  being required to engage other counsel for purposes of patent prosecution, other than a generalized

17  concern that the prosecution bar will restrict its access to the "technical know-how" of all of its

18  attorneys.[8]  These factors counsel in favor of requiring the parties follow the Model PO's

19  prosecution bar.  However, to avoid creating inconsistent obligations for counsel, only protected

20  information that is produced *solely in this case* and not in the Oregon case shall be subject to a

---

[7] In fact, the parties admit there is at least *some* overlap in discovery between the Oregon case and this case.  For example, Synopsys has admitted that there is "a subset of highly confidential technical information . . . that may be relevant in both cases." Synopsys Supp. Br. [Docket No. 123] at 5.  Furthermore, both parties have raised objections to requests for production of documents on the ground that responsive documents may have already been produced in the other litigation.  Mot. Protective Order [Docket No. 107] at 10.

[8] Indeed, Mentor argued that none of three counsel who are active in both cases are competitive decisionmakers.  *See* Docket No. 124 at 5.  As such, Mentor retains the right to seek an exemption from the prosecution bar on a counsel-by-counsel basis by demonstrating (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use." *In re Deutsche Bank,* 605 F.3d at 1381.

prosecution bar.  Discovery that is produced *both* here and in the Oregon case shall continue to be governed by the Oregon PO.

**B. Subject Matter and Scope of Prosecution Bar**

Synopsys proposes that the prosecution bar cover the subject matters of "emulation, functional verification, or logic synthesis tools."  Mentor requests that, if the court orders a prosecution bar, it should be limited to the purported technology of the asserted patents, which Mentor describes as "logic synthesis tools."  Letter at 4.

Synopsys admits that the patents-in-suit cover only logic synthesis.  *See* Docket No. 123 at 1 ("The asserted patents in this case concern logic synthesis . . . .").  At the hearing, Synopsys averred that, despite the narrow subject matter of the patents-in-suit, Synopsys's inventions that practice the patents involve other technology in addition to logic synthesis, and that discovery about those products necessarily includes ancillary confidential and proprietary information about those other technologies.  Mentor responded that Synopsys had not produced documents sufficient for Mentor to evaluate this assertion.

The court declines to rule on the subject matter scope of the prosecution bar, and instead orders the parties to meet and confer on the matter.  Synopsys shall produce responsive documents to Mentor to permit Mentor to evaluate Synopsys's contention that discovery in this case implicates Synopsys's confidential technical information about technologies outside the field of logic synthesis.

The parties also indicated at the hearing that they had not met and conferred on certain other elements of the protective order.  Accordingly, the court orders the parties to meet and confer on all above matters and submit a stipulated proposed protective order by **February 28, 2014**.  If the parties are unable to resolve their disputes, they shall file a joint discovery letter on the remaining disputes by the same date.  Any such joint discovery letter shall include as attachments documents supporting each party's arguments regarding the subject matter of the prosecution bar.

IT IS SO ORDERED.

Dated: January 29, 2014

DONNA M. RYU
United States Magistrate Judge