**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SYNOPSYS INC,

          Plaintiff(s),

      v.

MENTOR GRAPHICS CORP,

          Defendant(s).

_____/

No. C-12-06467-MMC (DMR)

**ORDER RE: JOINT DISCOVERY LETTER [DOCKET NO. 391]; MOTION TO SEAL [DOCKET NO. 438]**

The parties filed a joint discovery letter in this patent case.  [Docket No. 391.]  Defendant Mentor Graphics Corporation contends that Plaintiff Synopsys, Inc's treatment of Mentor's source code violated the parties' Stipulated Protective Order ("PO").  Mentor moves for sanctions.  For the reasons stated below, Mentor's motion is **granted in part and denied in part**.

### I.  PROTECTIVE ORDER

The court begins by describing the protective order which gives rise to Mentor's motion for sanctions.  *See* Docket No. 146.

Section 10 of the PO governs the treatment of source code in this litigation.  Section 10(a) controls source code that is produced to a receiving party.  It provides that electronic copies of source code may only be kept on certain encrypted, password-protected, non-networked computers, and prohibits the emailing or ftp (file transfer protocol) transfer of source code.  PO §§ 10(a)(ii), 10(a)(iv)(i), 10(a)(iv)(4).  Section 10(b) governs circumstances, such as the one presented here,

**United States District Court**

For the Northern District of California

1   where a party makes its source code available for review.  Section 10(b) requires that the source

2   code be made "available for inspection on a secured computer in a secured room without Internet

3   access or network access to other computers . . . ."  PO § 10(b)(i).  "[T]he Receiving Party shall not

4   copy, remove, or otherwise transfer any portion of the source code onto any recordable media or

5   recordable device.  The Designating Party may visually monitor the activities of the Receiving

6   Party's representatives during any source code review, but only to ensure that there is no

7   unauthorized recording, copying, or transmission of the source code."  *Id.*

8        Section 10(b)(v) provides that after inspecting the source code, the reviewing party can

9   request paper copies of source code for particular uses: "[t]he Receiving Party may request paper

10   copies of limited portions of source code that are reasonably necessary for the preparation of court

11   filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request

12   paper copies for the purpose of reviewing the source code...in the first instance."  PO § 10(b)(v).

13   "The Designating Party may challenge the amount of source code requested in hard copy form."  *Id.*

14

15        Section 10(b)(vi) prohibits conversion of paper copies of source code into any electronic

16   format.  "The Receiving Party shall not create any electronic or other images of the paper copies and

17   shall not convert any of the information contained in the paper copies into any electronic format.

18   The Receiving Party shall only make additional paper copies if such additional copies are (1)

19   necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert

20   report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case."  PO

21   § 10(b)(vi).

22                                **II.  FACTUAL BACKGROUND**

23        Synopsys' expert on patent infringement is Dr. Shawn Blanton.  On September 5, 2014,

24   Synopsys served Dr. Blanton's reply expert report on Mentor.  Exhibit 24 to that report included 171

25   lines of Mentor's source code.  The 171 lines were not consecutive: the longest sequential excerpt

26   was 68 lines long, but the majority of the excerpts contained 7 lines of consecutive code or fewer.

27        After Mentor realized that it had never provided paper copies of the 171 lines of code to

28   Synopsys, Mentor asked Synopsys how it had acquired them.  Synopsys explained that its agent

2

**United States District Court**

For the Northern District of California

1 Adel Assaad, who was one of the individuals permitted to inspect the source code, had taken typed

2 verbatim notes of the source code during one of his inspection sessions.  Mr. Assaad then provided

3 the notes to Dr. Blanton during a WebEx[1] session for which Synopsys attorney Aseem Gupta was

4 also present.

## III.  DISCUSSION

6       Mentor contends that by having Mr. Assaad type verbatim excerpts of source code into his

7 notes, and then by sharing that source code via WebEx, Synopsys violated three provisions of the

8 PO: Section 10(b)(i), Section 10(b)(vi), and Section 10(a)(iv).[2]

## A.  Section 10(b)(i)

10       Mentor argues that Synopsys violated Section 10(b)(i), which states that a party inspecting

11 the source code "shall not copy, remove, or otherwise transfer any portion of the source code onto

12 any recordable media or recordable device" or "record[], copy[], or transmi[t] . . . the source code."

13 According to Mentor, Mr. Assaad's act of typing lines of source code into his notes constitutes

14 "copying" or "transferring" the source code onto recordable media.

15       Synopsys counters that typing lines of source code into notes does not constitute "copying"

16 or "transferring."  *See* Thayer Decl. [Docket No. 439] at ¶ 44 (the term "copy" in the context of

17 source code means "hooking up a computer and copying electronically, or scanning, the code").  In

18 fact, according to Synopsys, the PO contemplates that an inspector must be able to type excerpts of

19 code into his or her notes.  Since the PO prohibits a party from requesting paper copies of source

---

[1] "WebEx is an online videoconferencing tool that allows users to place documents online for viewing during the videoconference." Letter at 1 n. 3. Mentor describes Synopsys' attorneys' WebEx page as "a publicly-accessible Web page through which anyone may intercept unprotected transmissions," but Synopsys explains that its WebEx page is secured and password-protected, and that WebEx does not save the information for a session once it concludes. Furthermore, Synopsys notes that the ftp site which it used for transferring Dr. Blanton's reply expert report and Exhibit 24 to that report has been deleted so that those documents can no longer be accessed from that location. Letter at 9.

[2] Mentor does not assert that Synopsys disclosed the source code to unauthorized individuals, or that Synopsys used the source code for an improper purpose. Mr. Assaad's notes and electronic copies of Exhibit 24 have been in the possession of Mr. Assaad, Dr. Blanton, Aseem Gupta, and Synopsys attorneys Phil Woo and David DeZern. Mentor acknowledges that all of these individuals are authorized to inspect source code pursuant to the PO. Mentor also does not contend that the source code in Exhibit 24 has been used for any purpose other than that which is permitted by the PO. *See* PO Section 10(b)(vi).

**United States District Court**
For the Northern District of California

1  code for the purpose of performing original analysis, *see* PO § 10(b)(v), the reviewing party must

2  analyze source code during the inspection.  Synopsys contends that Mr. Assaad was doing exactly

3  that when he typed the disputed lines of source code into his notes.  Synopsys further explains that

4  because Mentor provided paper copies of source code without the line numbers that are visible

5  during electronic inspection, "it would have been difficult if not impossible...to request paper copies

6  of source code and then connect those paper copies back to the electronic code that was analyzed

7  during inspection unless the expert typed up excerpts of the code to memorialize his analysis."

8  Letter at 7.

9         There is some sense in Synopsys' position.  The restrictions imposed on the party inspecting

10  the source code (i.e., requiring analysis *during* inspection, placing limits on the place and time of

11  inspection) could lead the inspector to take detailed notes in order to memorialize his or her analysis

12  and to be able to locate the relevant source code in the paper copies.  Thus, it is plausible to read

13  Section 10(b)(i)'s restrictions on copying or transferring code as permitting an inspector to

14  incorporate at least some source code into his or her review notes.

15         However, Synopsys' argument goes too far.  The PO's prohibition against "copying" source

16  code onto recordable media surely must prohibit extensive typing of the source code into one's

17  notes.  At the hearing, Synopsys' counsel Phil Woo admitted as much.  Synopsys does not explain

18  why it was reasonable to copy 171 lines of code, including 68 consecutive ones.  At the hearing,

19  Synopsys' counsel stated that prior to September 5, 2014, Mr. Assaad had never needed to copy

20  more than 20 lines of source code into his notes, but found it necessary to do so on that day because

21  of the volume of source code that had to be analyzed in the small time period between the

22  submission of Mentor's expert report and the due date for Dr. Blanton's reply report.  But Synopsys'

23  urgent need for source code does not justify the act of copying large blocks of source code under the

24  PO.  Thus, the court concludes that Mr. Assaad's act of capturing 171 lines of source code, including

25  68 sequential lines, constitutes "copying" source code in violation of Section 10(b)(i) of the PO.

26  **B. Section 10(b)(vi) and Section 10(a)(iv)**

27         Mentor contends that Synopsys also violated Section 10(b)(vi) and Section 10(a)(iv) of the

28  PO.  These sections place tight restrictions on the storage and transmission of source code.  Paper

4

**United States District Court**

For the Northern District of California

1   copies of source code made available for inspection must be stored in a secured, locked area, and

2   may not be converted into any electronic format.  PO § 10(b)(vi).  Electronic copies of source code

3   produced to a receiving party must be encrypted, viewed only on a non-networked computer, and

4   must not be emailed or stored in an Internet-accessible location for any period of time.  Section

5   10(a)(iv).

6          To begin with, Section 10(a)(iv) does not apply here, as it governs source code that is

7   produced directly to a party, rather than produced for review by a party.  Turning to Section

8   10(b)(vi), it states that "[t]he Receiving Party shall not create any electronic or other images of the

9   paper copies and shall not convert any of the information contained in the paper copies into any

10  electronic format."  This section does not clearly encompass Mr. Assaad's act of typing source code

11  into notes and then converting them into a format viewable via WebEx.  This is because Section

12  10(b)(vi) controls paper copies, and Mr. Assaad's notes were not "paper copies" under the PO.

13         However, even if Synopsys' behavior did not violate the letter of Section 10(b)(vi), it

14  violated its spirit.  Synopsys made no attempt to request paper copies of the 171 lines of code prior

15  to submitting Dr. Blanton's reply report.[3]  Instead, it side-stepped the process by having Mr. Assaad

16  type large amounts of code into his notes.  Had Synopsys received paper copies of source code,

17  Synopsys would have been prohibited from using them in an online conference, for the PO does not

18  permit conversion of paper copies of source code into an electronic format such as a document

19  viewable during a WebEx session.[4]  By skirting the process for requesting paper copies, Synopsys

20  essentially bypassed the provisions of the PO which would have prevented the conversion of those

21  paper copies into a WebEx document.  Under these circumstances, conversion of Mr. Assaad's notes

22  into a WebEx transmission is as inappropriate as a similar conversion of paper copies.  Therefore,

23  Synopsys violated Section 10(b)(vi) of the PO when it converted significant amounts of source code

24  in Mr. Assaad's notes into an electronic format viewable on WebEx.

25  

26  
        [3] Mentor asserts that it would have given Synopsys  paper copies of the code if Synopsys had
    only asked.  Indeed, after Synopsys submitted Dr. Blanton's reply report, Synopsys requested paper
27  copies of the 171 lines of source code, which Mentor then provided.

28  
        [4] As noted above, *see supra* n. 1, the parties agree that "WebEx is an online videoconferencing
    tool that allows users to place documents online for viewing during the videoconference."

**United States District Court**
For the Northern District of California

## C. Remedies

Mentor seeks the following relief for Synopsys' violation of the PO: (1) to withdraw its approval of Mr. Assaad and Dr. Blanton[5] to view any of Mentor's confidential information, including source code and "previously-taken notes" (presumably Mr. Assaad and Dr. Blanton's own notes); (2) to preclude Dr. Blanton from testifying at trial on any topic related to Mentor's confidential information; (3) to preclude Aseem Gupta or anyone who was involved with the WebEx transmission from reviewing Mentor's confidential information; (4) to have Synopsys destroy all electronic and typed copies of Mentor's source code. Mentor does not specify the basis for the court's authority to grant these remedies.

Rule 37 authorizes the imposition of various sanctions for discovery violations, including a party's failure to obey a court order to provide or permit discovery, Fed. R. Civ. P. 37(b)(2)(A), but Mentor does not contend that Synopsys' violation of the PO falls within any of the grounds for sanctions under Rule 37. The PO itself provides for some remedies in the event of improper disclosure of protected materials, but the remedies requested by Mentor go beyond what the PO authorizes. *See* PO § 15 (if any protected material is disclosed in a manner not authorized by the PO, the disclosing party "shall immediately take all reasonable efforts to prevent further disclosure by each unauthorized person who received such information, and shall immediately require each unauthorized person to return all Protected Material..., all copies..., and all documents containing excerpts from or references to the improperly disclosed Protected Material"). In addition, a court may use its inherent power to impose sanctions for discovery abuses that may not be a technical violation of the discovery rules, *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988),

---

[5] In this lawsuit, Synopsys brings claims for infringement of four patents. *See* Compl. [Docket No. 1.] On August 1, 2014, Judge Chesney stayed the case as to Synopsys's fourth claim, pending *inter partes* review of the asserted patent. *See* Docket No. 215. That stay is ongoing. *See* Docket No. 446. On January 20, 2015, Judge Chesney granted summary judgment in favor of Mentor on Synopsys's first, second and third claims, finding that those asserted patents were invalid. *See* Docket No. 442. Synopsys has appealed this determination to the Federal Circuit. *See* Docket No. 446. Dr. Blanton is offered as Synopsys's expert on infringement. Because questions about infringement remain at issue—for example, they may arise if *inter partes* review does not resolve Synopsys's fourth claim or if Judge Chesney's summary judgment order is successfully appealed—Dr. Blanton's expert opinions are still potentially meaningful to Synopsys's case.

**United States District Court**

For the Northern District of California

though "such powers are to be used carefully." *Banga v. Experian Info. Solutions*, No. C-08-4147 SBA (EMC), 2009 WL 2407419, at *1 (N.D. Cal. Aug. 4, 2009) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion.  A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.")).

The court now invokes its inherent authority in making determinations regarding Mentor's motion for sanctions. The remedies sought by Mentor are disproportionate to the transgression. Mentor has not explained what prejudice it has suffered as a result of Synopsys' violation.  Mentor admits that all of the individuals who had access to the source code typed into Mr. Assaad's notes had permission to access Mentor's source code.  Mentor also concedes the relevance of the source code, admits that it would have produced paper copies of the source code in Exhibit 24 had Synopsys requested it, and in fact later provided paper copies of that source code.  Synopsys argues that the sanctions sought by Mentor would amount to terminating sanctions, because Dr. Blanton is Mentor's only expert on infringement. Mentor generally does not explain how the sanctions it seeks would serve to restore Mentor.[6]

On the other hand, Synopsys' violation of the PO is a serious matter that should not go unaddressed.  At the hearing, the court required Synopsys' lead outside counsel to file a declaration explaining the circumstances under which the 171 lines of source code were copied and transmitted, and the actions of each individual involved in that process.  Synopsys' lead counsel filed the declaration. *See* Thayer Decl.  According to Synopsys, its attorneys advised Mr. Assaad that he could "take notes as needed for his analysis" and both Synopsys' attorneys and Mr. Assaad "had a good faith belief that typing notes including limited fragments of source code into his laptop as necessary to prepare the expert reports would not violate Section 10(b)(i)." *Id.* at ¶ 44.  However, "[n]one of Synopsys' attorneys or Dr. Blanton told Mr. Assaad that he should limit the number of sequential lines of code that he excerpted into his laptop to no more than a certain number." *Id.* at ¶ 47.  As discussed above, it may be the case that Section 10(b)(i) permits the inspector to copy

---

[6]   Indeed, given the timing of its sanctions motion, the overreaching nature of the requested relief, and the utter failure to demonstrate any prejudice, Mentor's motion smacks of gamesmanship rather than an attempt to address a real harm.

**United States District Court**

For the Northern District of California

"limited fragments" of source code into reviewer notes, but the copying that occurred in the present circumstances went well beyond "limited fragments." Having reviewed the declaration, the court finds that Synopsys' attorneys at the law firm of Sidley Austin LLP permitted actions that violated the PO by failing to adequately train and supervise individuals regarding the requirements of the PO. The court admonishes those attorneys.

Synopsys is also ordered to destroy all electronic copies of source code, as well as notes containing more than ten sequential lines of source code.[7] However, Synopsys need not destroy electronic copies of court filings, drafts of court filings, expert reports or draft expert reports if those documents contain source code.

While the court concludes that it is in inappropriate to preclude Dr. Blanton from testifying at trial on any topic related to Mentor's confidential information, the court agrees that it is appropriate for Mentor to withdraw its approval of Mr. Assaad to view any of Mentor's confidential information, including source code and Mr. Assaad's own notes. However, Mentor shall not unreasonably withhold approval of a replacement for Mr. Assaad as an individual authorized to review source code pursuant to the PO.

### IV.  CONCLUSION

Mentor's motion for sanctions is **granted in part and denied in part**.[8]

IT IS SO ORDERED.

Dated:  June 2, 2015

DONNA M. RYU

United States Magistrate Judge

---

[7] By requiring Synopsys to destroy all notes containing more than ten sequential lines of code, the court is not interpreting the PO to mean that hand-copying or typing source code does not constitute the "copy, remove, or otherwise transfer" of source code as long as it is under ten sequential lines. Instead, the court has chosen ten sequential lines because Synopsys avers that the "vast majority" of the source code copied by Mr. Assaad were seven lines or fewer, Letter at 7, and the court must fashion a remedy that excises Mr. Assaad's illegitimate notes without requiring the destruction of all of his work product.

[8] Synopsys has also filed a motion to seal portions of an exhibits to a declaration associated with the joint discovery letter. [Docket No. 438.] Synopsys has provided declaration in support of its motion to seal establishing that the portions sought to be sealed contain confidential and commercially sensitive information that is sealable. *See* Docket No. 438-1; Civil L.R. 79-5(d), 79-5(e). Accordingly, the motion to seal is **granted.**