IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SYNOPSYS, INC.,

    Plaintiff,

  v.

MENTOR GRAPHICS CORPORATION,

    Defendant.

No. C 12-6467 MMC

**ORDER DENYING MOTION FOR ATTORNEY FEES**

Before the Court is defendant Mentor Graphics Corporation's ("Mentor") Motion for Attorney Fees, filed May 4, 2015, pursuant to 35 U.S.C. § 285, Rule 54(d) of the Federal Rules of Civil Procedure, and Civil Local Rule 54. Plaintiff Synopsys, Inc. ("Synopsys") has filed opposition, to which Mentor has replied. The matter came on regularly for hearing on June 12, 2015. John D. Vandenberg of Klarquist Sparkman, LLP appeared on behalf of Mentor. M. Patricia Thayer of Sidley Austin, LLP appeared on behalf of Synopsys. Having considered the papers filed in support of and in opposition to the motion, and the arguments of counsel at the hearing, the Court rules as follows.

**BACKGROUND**

Synopsys filed the instant patent infringement action on December 21, 2012, alleging Mentor's products infringe four Synopsys patents: U.S. Patent Nos. 5,748,488 ("'488 patent"), 5,530,841 ("'841 patent), and 5,680,318 ("'318 patent") (collectively, "the Gregory patents") and U.S. Patent No. 6,836,420 ("the Seshadri patent"). The Gregory

patents concern the design of logic circuits (see, e.g., '488 patent, col. 1:1-2), and, in particular, "[a] method and system . . . for generating a logic network using a hardware independent description means" (see '841 patent, Abstract). The Seshadri patent concerns a design for a "resetable memory" for use in electronic circuits. (See '420 patent col. 1:8-10.)

On October 3, Mentor and Synopsys filed cross-motions for summary judgment, setting forth the parties' respective positions as to the patent eligibility of the asserted claims in the Gregory Patents[1] under 35 U.S.C. § 101. Thereafter, on January 20, 2015, the Court concluded the asserted claims were invalid under § 101 and granted Mentor's motion for summary judgment. (See Order on Motions for Summary Judgment ("Summary Judgment Order"), Doc. No. 442, at 1.)

On April 20, 2015, the Court entered judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, adjudicating the eight asserted claims of the Gregory Patents invalid under § 101. See Fed. R. Civ. P. 54(b) (providing "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties"); (see also Stipulated Motion and Order for Entry of Final Judgment, Doc. No. 446, at 5). On May 4, 2015, Mentor filed the instant motion for attorney fees.

## LEGAL STANDARD

In patent actions, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." See 35 U.S.C. § 285. An exceptional case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. Icon Health & Fitness, 134 S. Ct. 1749, 1756 (2014). District courts are to use their discretion and consider the totality of the circumstances when determining whether a case is exceptional. Id. To be considered exceptional, conduct need not be "independently sanctionable." Id. Nor is a finding of bad

---

[1] The cross-motions did not address the Seshadri patent.

faith required; "a case presenting either subjective bad faith or exceptionally meritless claims" may warrant the award of fees. Id. at 1757.

## DISCUSSION

Mentor contends it is the prevailing party and that the instant case is exceptional because, according to Mentor, Synopsys asserted the Gregory Patents despite its knowledge of a significant on-sale bar issue; thwarted and delayed discovery establishing the on-sale bar defense; continued to assert the Gregory Patents after any reasonable litigant would have conceded their invalidity under § 101; and made a noncolorable allegation of willful infringement to place Mentor under a threat of trebled damages.

**A. Prevailing Party**

At the outset, Synopsys argues Mentor is not the prevailing party, and thus that the instant motion is premature, because the Court's April 20, 2015 judgment only applies to the Gregory Patents and Synopsys' claims based on the Seshadri patent remain to be adjudicated. The Court is not persuaded. As noted, final judgment on the claims based on the Gregory patents was entered pursuant to Rule 54(b), which, in turn, triggered Rule 54(d)'s requirement that the motion for attorney fees "be filed no later than 14 days after the entry of judgment." See Fed. R. Civ. P. 54(d); Johnson v. Orr, 897 F.2d 128, 131 (3d Cir. 1990) (holding "certification of a judgment under Rule 54(b) triggers, subject to review, all of the direct consequences of any final judgment"; finding district court "was authorized to fix attorneys' fees" after entry of judgment under Rule 54(b) despite pendency of another claim); see also John Deere Ins. Co. v. Shamrock Indus., Inc., 929 F.2d 413, 418 (8th Cir. 1991) (rejecting argument that district court prematurely awarded attorneys' fees on judgment entered pursuant to Rule 54(b) where other issues remained to be decided).

Synopsys also suggests that in the event the Court finds the motion timely, it exercise its discretion to defer ruling pending adjudication of all claims in the action. The Court, however, agrees with Mentor that the interests of judicial economy would best be served by a resolution of the motion at this time, which may allow for consolidation of any appeal of such decision with the pending appeal on the merits.

**B. On-Sale Bar**

The "on-sale bar" is codified at 35 U.S.C. § 102, which, at all relevant times, provided: "A person shall be entitled to a patent unless . . . the invention was . . . on sale in this country[] more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102 (1975). "[T]he on-sale bar applies when two conditions are satisfied before the critical date."[2] Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 67 (1998). Specifically, (1) "the product must be the subject of a commercial offer for sale" and (2) "the invention must be ready for patenting." Id.

In this case, the Gregory patents' earliest filing date is December 21, 1990, and, consequently, the "critical date" is December 21, 1989, i.e., one year earlier.  Mentor argues the asserted claims of the Gregory patents are invalid under the on-sale bar because, according to Mentor, Synopsys offered for sale software that included the claimed invention before the critical date.  In support thereof, Mentor relies on the chronology of various events surrounding the critical date.  In particular, Mentor points out that Synopsys "released VHDL compiler" (see Mot. at 3:22-23), the product incorporating the claimed invention, the day after the critical date, and had taken at least one order for VHDL Compiler in October 1989, several months before the critical date; Mentor also notes that Synopsys had issued licences for VHDL Compiler that expired before the patents' filing date and thus, according to Mentor, such licenses likely were issued a year earlier, i.e., before the critical date.

Synopsys, in response, states it did not sell or offer to sell the patented invention before the critical date, and, in support thereof, points to evidence in the record demonstrating that (1) "in the fall of 1989," the inventors had only "outlined a possible approach for generating logic circuits from a text description" (see Loesch Decl. Ex. E at

---

[2] The "critical date" is one year before the application for the patent is filed.  See Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 67 (1998) (noting date one year before application for patent "constitutes the critical date for purposes of the on-sale bar of 35 U.S.C. § 102(b)").

4

1  SNPS_00155133 (Declaration of Brent L. Gregory)); (2) "it was unclear when [the
2  inventors] would complete implementation" and ultimately "completed . . . development only
3  days before the critical date" (see id. at SNPS_00155128 (Declaration of Russell B.
4  Segal)); (3) "Synopsys intended to ship a version of VHDL Compiler in December 1989
5  independent of whether the product contained the additional functionality provided by the
6  invention" (see id.); (4) prior to the critical date, none of Synopsys' application engineers,
7  the employees who "'rolled out' new features of [Synopsys'] products to customers, [and]
8  provided [Synopsys'] customers with training and training materials," had "received
9  information regarding the invention" (see id. at SNPS_00155131 (Declaration of Deirdre
10 Hanford)); and (5) the training materials used prior to the critical date by Synopsys'
11 application engineers "did not describe or mention the invention" (see id.).

12         On the record before the Court, Mentor has, at best, shown a triable issue exists as
13 to the on-sale bar.  Implicitly acknowledging its evidence is not dispositive, Mentor argues
14 that Synopsys should not have asserted the Gregory Patents in light of the on-sale bar
15 "cloud" (see Mot. at 2:2) and that Synopsys did so solely in an effort to improperly
16 "leverage"[3] the Gregory Patents against Mentor (see Mot. at 2:24).  Pursuing an action
17 where the result is uncertain, however, is far from exceptional.  See, e.g., LendingTree,
18 LLC v. Zillow, Inc., 54 F. Supp. 3d 444, 458 (W.D.N.C. 2014) (finding case unexceptional
19 where patentee, despite not prevailing on infringement, "had at least a loose footing on
20 which to rest its infringement arguments"); Gametek LLC v. Zynga, Inc., 2014 WL 4351414,
21 at *3 (N.D. Cal. Sept. 2, 2014) (refusing to find case exceptional where patentee's position
22 "did not . . . descend to the level of frivolous argument or objective unreasonableness").

---

[3] According to Mentor, the accused functionality has been largely unchanged in Mentor's products since 2002, but the instant suit was not filed until 2012, shortly after Synopsys acquired EVE-USA, Inc., a company against which Mentor at that time was pursuing a patent infringement action.  Synopsys contends it was not aware of Mentor's infringement until it purchased EVE-USA, Inc., became a party to Mentor's lawsuit, and obtained access to documents showing Mentor's infringement.  Mentor makes no showing to the contrary.

Next, separate and distinct from whether Synopsys should have gone forward with its case despite the on-sale bar "cloud," Mentor contends that Synopsys' conduct in discovery relating to the on-sale bar warrants a finding that the instant case is exceptional. Specifically, Mentor asserts that Synopsys conducted an insufficient pre-suit investigation, resulting in Synopsys' failure to timely collect relevant on-sale bar documents, which, in turn, delayed the production of on-sale bar documents until late in discovery.[4] Synopsys, in response, argues it is not Synopsys' burden to show it did conduct a proper investigation, but, rather, Mentor's to show Synopsys did not. In any event, irrespective of whether it would have been preferable for Synopsys to have offered some explanation for its delay in producing the subject documents, the documents ultimately were produced[5] and, in contrast to the delayed discovery cases on which Mentor relies, were not dispositive of the issue. Cf. Logic Devices, 2014 WL 6844821, at *4 (N.D. Cal. Dec. 4, 2014) (finding case exceptional where patentee, inter alia, "waited nearly a year into the lawsuit to finally [make dispositive] admi[ssion] that no terminal disclaimer had been filed"); LendingTree, LLC v. Zillow, Inc., 54 F. Supp. 3d 444, at 462 (W.D.N.C. Oct. 9, 2014) (finding case exceptional where defendant did not identify dispositive witnesses until trial and did not produce "key" documents until court issued second order compelling their production, which order also

---

[4]Patent Local Rule 3-2 provides that at the time of a party's initial disclosure of asserted claims and infringement contentions, such party must produce various categories of documents, including documents "sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, or any public use of, the claimed invention prior to the date of application for the patent in suit." See Patent L.R. 3-2. Mentor has not shown any of the documents it ultimately received were "sufficient to evidence" any sale of or offer to sell the claimed invention, as opposed to merely offers to sell a product that ultimately, after the critical date, incorporated the claimed invention. On June 25, 2013, however, Mentor submitted to Synopsys requests for production of "all documents relating or referring to" Synopsys' "efforts to sell, offers for sale, and actual sales" of the invention (see Loesch Decl. Ex. K at 10-11), and, according to Mentor, "[t]he majority of the on-sale bar documents were produced on: May 19, May 23, June 3, June 9, July 7, July 11, July 18, August 5, and September 12, 2014." (See Mot. at 8:26-27.)

[5]Mentor acknowledges that it was "able to get, by the end of the discovery period, the on-sale bar evidence." (See Mot. at 18:3-4.)

6

sanctioned patentee for violation of first order compelling production).

Mentor also contends Synopsys "forced" it to file repeated motions to compel in an effort to obtain the on-sale bar evidence. (See Mot. at 9:27-10:1.) As Synopsys correctly points out, however, the magistrate judge who heard the motions denied much of what Mentor sought by those motions, and, to the extent some of what was sought was granted, denied Mentor's request for sanctions. Although, as noted above, conduct need not be sanctionable to be exceptional, see Octane Fitness, 134 S. Ct. at 1756 (holding "sanctionable conduct is not the appropriate benchmark"), the Court finds the parties' discovery dispute here was, essentially, "run of the mill," see LendingTree, 54 F. Supp. 3d at 460 (noting case "involv[ed] two sophisticated companies seeking a hard-fought judgment on the merits," where "some litigation tactics and arguments regarding the evidence proved successful, while others did not").

Lastly, Mentor argues it might have been able to submit stronger evidence in support of its on-sale bar defense, but Synopsys, knowing the on-sale bar could be an issue, nevertheless destroyed sales records potentially relevant thereto.[6] In that regard, Mentor points to Synopsys' acknowledgment that sales records for the period in question, if any existed, no longer exist. Mentor has submitted no evidence, however, demonstrating, or even suggesting, Synopsys destroyed the sales records at or after the time the instant litigation was initiated, and indeed, the evidence shows that if such documents did exist, they were destroyed many years earlier, outside the context of any litigation. Under such circumstances, the Court finds Mentor has failed to show an intentional withholding of evidence, let alone material evidence. Cf. Summit Data Sys., LLC v. EMC Corp., 2014 WL 4955689, at *5 (finding case exceptional where patentee, inter alia, did not disclose, until 18 months into litigation, licensing agreement negating its claims.)

---

[6]It is undisputed that in 1997, Synopsys, as part of its required disclosures in prosecuting a related patent, submitted to the United States Patent and Trademark Office the above-cited Gregory, Segal, and Hanford declarations. As set forth above, however, those declarations in effect state there are no records supporting an on-sale bar.

7

**C. Section 101**

Mentor argues it was clear the Gregory patents were directed to unpatentable subject matter and subject to dismissal under 35 U.S.C. § 101, and that Synopsys should not have pursued its claims or made various unpersuasive arguments in support of its position. The Court disagrees. Although the Court ultimately found in favor of Mentor on the § 101 issue, the Court did not accept Mentor's primary argument in support of its position. (See Summary Judgment Order at 8:2-6.) Further, the issue raised at summary judgment arose in the context of a developing area of the law, namely, when a patent claiming an otherwise ineligible abstract idea or mental process includes in addition what has been characterized as an "inventive concept." See Alice Corp. Pty. Ltd. v. CLS Bank Int'l, ––– U.S. ––––, ––––, 134 S. Ct. 2347 at 2355 (2014); see also Gametek, 2014 WL 4351414, at *3 (noting "the critical issue of inventive concept is evolving"); Trading Techs. Int'l, Inc. v. CQG, Inc, 2015 WL 774655, at *2 (N.D. Ill. Feb. 24, 2015) (noting "the section 101 jurisprudence is a recently evolving and unsettled area of law as it applies particularly to software patents").[7] Indeed, at the hearing on the motions, the Court itself observed that the issue was a "difficult" one (see Nov. 7, 2014 Hr'g. Tr. at 62:16) and invited the parties to continue submitting relevant decisions prior to the Court's ruling. In short, the Gregory patents' ineligibility under § 101 was not obvious, and the strength of Synopsys' position, in this complex and changing area of the law, was not in any manner weak enough to make the case exceptional. See, e.g., Site Update Sols. LLC v. Accor N.A., Inc., 2015 WL 581175 at *5, *8 (N.D. Cal. Feb. 11, 2015) (finding patentee's "interpretation of MPF [means-plus-function] law was flawed but not so objectively unreasonable or unusual as to make th[e] case exceptional").

Mentor next argues Synopsys' conduct during discovery pertaining to the § 101

---

[7]Although the Gregory patents do not require a computer, the invention is primarily intended for use with a computer, and the patents append source code for a software program implementing the claimed inventions. (See '488 Patent, col. 9:41-44 (stating "[t]he system and method of this invention are operable in a computer system that includes a data input device, such as a keyboard, a processing unit, and an output display device").

8

issue supports an award of fees. In that regard, Mentor points out that it served on Synopsys requests for admission ("RFA's") that asked, as to each claim, whether "a person could perform the method of [the claim] without using a computer" (see Loesch Decl. Ex. V), and that after Synopsys denied those RFA's, several of Synopsys' witnesses, in the course of their depositions, admitted they could perform the claimed steps without a computer. Although, in opposition to the instant motion, Synopsys argues the deposition testimony is not as clear as described by Mentor, the Court notes that Synopsys, in opposing Mentor's motion for summary judgment, did concede the claimed invention "can be performed in the human mind." (See Opp'n to M. for Summ. J., Doc. No. 310-4 at 5:17.) The Court further notes, however, that said concession was as to the invention "in its most simplistic form" (see id. at 5:18) and that Synopsys, throughout the instant litigation, has contended the claimed invention is designed for a computer and cannot, as a practical matter, be performed by a person. Consequently, even if Synopsys interpreted the RFA's as allowing for a qualification not included therein, its failure to respond affirmatively does not appear to have been with an intent to mislead, see, e.g., Transperfect Global, 2014 WL 6068384, at *8 (finding case not exceptional where plaintiff, inter alia, inadvertently violated a court order on motions in limine), and Mentor has not shown how it suffered any additional expense in having to ask the deponents whether the claimed invention could be performed mentally, as those depositions likely would have been taken irrespective of Synopsys' response to the RFA's.

      Lastly, Mentor argues it was unreasonable, given the strength of Mentor's § 101 defense, for Synopsys to pursue a claim for willful infringement against Mentor, thereby subjecting Mentor to an unwarranted threat of treble damages.

      To prove willfulness, a party must show (1) that the accused infringer "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and (2) that such risk "was either known or so obvious that it should have been known to the accused infringer." In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Further, as to the first prong, such party must show by clear and convincing evidence any

9

alleged defenses were "objectively unreasonable." See Aqua Shield v. Inter Pool Cover Team, 774 F.3d 766, 773-74 (Fed. Cir. 2014).

Here, in hindsight, it would appear that Synopsys' position as to the strength of its case was overconfident. Prior to the Court's order granting summary judgment in favor of Mentor, however, the circumstances were different. At that time, although it may have been difficult for Synopsys to show Mentor's defenses were objectively unreasonable, its assertion of willfulness cannot be characterized as "exceptionally meritless" or otherwise warranting an award of fees. See Octane Fitness, 1345 S. Ct. At 1757 (holding case presenting "exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award").

**CONCLUSION**

Having considered the totality of the circumstances, the Court finds that neither Synopsys' litigating position, nor the manner in which the case was litigated, place the instant case within that group of "rare case[s]" qualifying as "exceptional." See Octane Fitness, 134 S. Ct. at 1757.

Accordingly, Mentor's Motion for Attorney Fees is hereby DENIED.

**IT IS SO ORDERED.**

Dated: July 16, 2015

MAXINE M. CHESNEY
United States District Judge